UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

HONORABLE MICHELE MIRRO,

                Plaintiff,

      -against-

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF CONSUMER AFFAIRS,
JONATHAN MINTZ, individually and in his official
capacity as Commissioner of the New York City
Department of Consumer Affairs, BRUCE DENNIS,
individually and in his official capacity as Director of
Adjudication of the New York City Department of
Consumer of Affairs, and JAMES PLOTKIN,
individually and in his official capacity, as Deputy
Director of Adjudication of the New York City
Department of Consumer Affairs, NANCY SCHINDLER,
individually and in her official capacity as Associate
Commissioner of the New York City Department of
Consumer Affairs,

              Defendants.
-------------------------------------------------------------X

# SUMMONS ISSUED

# CV 13-4257

**COMPLAINT**

**13 CIV**

MATSUMOTO, J.



J. ORENSTEIN, M.J

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

2013 JUL 29 PM 1:17

FILED
CLERK

      HONORABLE MICHELE MIRRO by her attorney Stewart Lee Karlin, Esq., complaining

of Defendants, THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CONSUMER

AFFAIRS, JONATHAN MINTZ, individually and in his official capacity as Commissioner of the

New York City Department of Consumer Affairs, BRUCE DENNIS, individually and in his official

capacity as Director of Adjudication of the New York City Department of Consumer of Affairs,

JAMES PLOTKIN, individually and in his official capacity, as Deputy Director of Adjudication of

the New York City Department of Consumer Affairs, and NANCY SCHINDLER, individually and

in her official capacity as Associate Commissioner of the New York City Department of Consumer

1

Affairs, alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matter, as follows:

## NATURE OF THE CLAIM

1.       This is a civil action based upon Defendants' violations of the First Amendment of the United States Constitution and Article I § 8 of the New York State Constitution by retaliating against Plaintiff, the Honorable Michelle Mirro because she spoke out externally and internally on matters of public concern relating to Defendants' practice of pressuring Administrative Law Judges to issue decisions in favor of the Defendant Department of Consumer Affairs and impose maximum fines. This action is also based upon Defendants' violation of the New York State Executive Law § 296 and the New York City Administrative Code § 8-107 by discriminating against Plaintiff due to her age. Plaintiff is seeking damages for violating the U.S. Constitution, the New York State Constitution, the New York State Executive Law and the New York City Administrative Code.

## JURISDICTION AND VENUE

2.       The Court has jurisdiction over Defendants pursuant to 28 U.S.C. § 1343(a)(3), providing for jurisdiction without regard to the amount in controversy in cases seeking redress from alleged infringements of civil right; pursuant to 28 U.S.C. § 1331, providing for jurisdiction in cases arising under the U.S. Constitution and laws of the United States pursuant to 28 U.S.C. §§ 2201 and 2202, providing for declaratory and injunctive relief; and pursuant to 28 U.S.C. § 1367, providing for supplemental jurisdiction over related state claims that are presented here. The case arises under the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983, creating a federal cause of action for individual citizens

2

to seek redress for violations of federal civil rights.

3.    This action properly lies in the Eastern District of New York pursuant 28 U.S.C. 1391 (b), because a Defendant Plotkin lives in this District and all Defendants are residents of the State of New York.

## PARTIES

4.    Plaintiff HONORABLE MICHELE MIRRO was at all times hereinafter mentioned is a resident of the State of New York, County of Kings.

5.    Plaintiff HONORABLE MICHELE MIRRO (hereinafter Judge Mirro or Plaintiff) (D/O/B: 04/02/1958) is employed with the Defendant in the Adjudication Division as an Administrative Law Judge ("ALJ").

6.    At all times hereinafter mentioned, upon information and belief, Defendant THE CITY OF NEW YORK, (hereinafter "defendant") was and still is a municipal corporation existing under the laws of the State of New York with its principal place of business located in the County of New York. Defendant NEW YORK CITY DEPARTMENT OF CONSUMER AFFAIRS, (hereinafter "Defendant" or "DCA") was and still is a governmental agency and/or department of the City of New York.  The Defendant is an employer within the meaning of the New York States Human Rights Law § 292 ("NYSHRL") and a person within the meaning of the New York City Human Rights Law § 8-102 ("NYCHRL").

7.    Defendant BRUCE DENNIS, (hereinafter "Dennis") is the Director of Adjudication of the DCA and is acting individually, and as and aider and abettor in connection the NYSHRL and the NYCHRL and on behalf of the City of New York and DCA .

8.    Defendant JAMES PLOTKIN, (hereinafter "Plotkin") is the Deputy Director of Adjudication

of the DCA and is acting individually, and as and aider and abettor in connection the NYSHRL and the NYCHRL and on behalf of the City of New York and DCA .

9. Defendant JONATHAN MINTZ, (hereinafter "Mintz") is the Commissioner of the DCA and is acting individually and as and aider and abettor in connection the NYSHRL and the NYCHRL and on behalf of the City of New York and DCA .

10. Defendant NANCY SCHINDLER, (hereinafter "Schindler") is the Associate Commissioner of the New York City Department of Consumer Affairs and is acting individually and as and aider and abettor in connection the NYSHRL and the NYCHRL and on behalf of the City of New York and DCA. Schindler was the Director of Adjudication of the DCA from May 2008 through January 2011.

11. Judge Mirro began her employment with the Defendant in September 1990. In 1995 Judge Mirro's civil service title was reclassified as Attorney-at-Law (Level III), which remains Judge Mirro's current classification as an ALJ. Judge Mirro is the longest tenured ALJ.

12. At all relevant times, Judge Mirro performed her responsibilities in an exemplary manner.

13. ALJ's receive Annual Performance Evaluations as their performance is rated "outstanding," "very good," "good," "conditional," and "unsatisfactory" as compared to the Tasks & Standards provided for the ALJ's. The Tasks & Standards is the list of the ALJ's duties and responsibilities for the position. Pursuant to the Department of Citywide Administrative Services ("DCAS"), the Personnel Rules of the City of New York, each year the ALJ is supposed to be given an opportunity to participate in what is included in the Tasks & Standards and is to be presented with a cosigned copy. Every year of Judge Mirro's employ, up to and including 2007, Tasks & Standards were completed.

4

14.  From 1990 to 2007 each of Judge Mirro's Annual Performance Evaluations was rated "very good" or "good."

15.  In June 2008 Judge Mirro's supervisor changed and Nancy Schindler was appointed as Director of the Adjudication Division and Bruce Dennis was appointed Deputy Director of the Adjudication Division.

16.  Upon his appointment in 2008, Schindler and Dennis began to pressure the Administrative Law Judges to find in favor of the DCA and impose maximum fines. Dennis' first step in pressuring the Administrative Law Judges was on September 2, 2008 when he removed the ALJ's power to issue decisions without supervisory approval and stated that all decisions must now be drafted as recommended decisions, to be approved by Dennis prior to the issuance of the decision. Other initial acts included requiring ALJ's to issue recommended decisions to be reviewed by Dennis and Schindler, use newly created templates to speed up the decision making process by removing the majority of the ALJ's discretion in writing decisions, reducing the amount of writing time an ALJ had to write decisions and to impose high fines.

17.  Dennis along with Deputy Director of Adjudication James Plotkin supervised the ALJ's. Dennis provided instruction to Plotkin as to how he wanted decisions to be decided by the Administrative Law Judges. Dennis' approval was now required on any ALJ decision in which the ALJ does not find the Respondent at the hearing guilty with the imposition of a maximum fine.

18.  Upon information and belief, it is currently the pattern and practice of Defendants to illegally pressure each of the ALJ's to find in favor of the DCA and impose the maximum fine.

19.     Upon information and belief, Commissioner Mintz has consistently approved this pattern
        and practice.

20.     The following are just a few examples (there are too many to set forth in this complaint) in
        which Judge Mirro recommended a not guilty decision or a mitigation of a fine. However,
        after pressure from Dennis and his repeated corrections to the decision, she was forced to
        find for the DCA and/or impose a maximum fine:

        a.      DCA v. York Fuel Inc. d/b/a Exxon; Decision dated January 11, 2013. Judge Mirro
                found the Respondent not guilty of the charge. After pressure from Plotkin and
                Dennis and repeated revisions to her decision Judge Mirro was forced to find the
                Respondent guilty and impose a fine of $20,000.

        b.      DCA v. Go New York Tours, Inc.; Decision dated June 19, 2013. Judge Mirro found
                Respondent guilty of 2 of 11 charges brought against them, imposing a fine of $700.
                However, Dennis and Plotkin pressured Judge Mirro to change her decision.
                Ultimately the supervisors overruled Judge Mirro's recommendation and found the
                Respondent guilty of 10 of 11 charges, imposing a fine of $11,200.

21.     Upon information and belief other senior ALJ's and the newly hired ALJ's are (and were)
        pressured to change not guilty decisions or those which mitigated the fine, for example:

        a.      DCA v. R and A Fair Trading Inc..; Hearing on June 12, 2013. The ALJ found
                Respondent not guilty yet was then repeatedly pressured to change her decision.

        b.      DCA v. Farrukh Tojiboev,; May 3, 2013. Upon information and belief the Director
                of Adjudication Dennis rewrote portions of the ALJ's decision and influenced the
                decision outcome.

6

    c.    Decision, CD DD500127228. Upon information and belief the ALJ's decision was revised and reviewed at least twice by Dennis and Plotkin prior to their final approval.

22.    The criticisms and scrutiny of Plaintiff's decisions, and upon information and belief, other Administrative Law Judges, are limited to decisions in which the ALJ finds Respondent not guilty or in which the ALJ mitigates the fine or reduces the counts.

23.    On May 6, 2009, Judge Mirro was served with a 2008 Annual Performance Evaluation, prepared by Dennis, in which Judge Mirro received a "conditional" rating. As noted previously, Dennis was appointed Deputy Director in December 2008 and had been Acting Deputy Director since June 2008, six months prior to the end of the evaluation period. During this time period, ALJ's were not given the opportunity to sign Tasks & Standards in 2008. When Judge Mirro specifically requested the Task & Standards for 2008 Deputy Director Dennis provided the 2003 Tasks & Standards.

24.    Judge Mirro duly filed an appeal of her 2008 Annual Performance Evaluation. She addressed the issues in the evaluation that Deputy Director Dennis claimed that she had not used the templates for decisions that he had recently implemented, but, the record demonstrates Judge Mirro did use them. Judge Mirro additionally addressed a claim in her evaluation that she had not submitted a decision (DCA v. Shuh 56, Inc.) to Deputy Director Dennis to review. Yet, the decision cited had been rendered before he was appointed a supervisor.

25.    Lastly, the 2008 Annual Performance Evaluation cites examples of decisions in which the analysis of the evidence and application of the law were criticized. However, Deputy Director Dennis consistently chose to find issue with Judge Mirro's decisions when the

determination was not favorable to the case put forth by the Department. In Judge Mirro's appeal to the Performance Evaluation, she complained of the illegal and inappropriate pressure to find for the DCA. However, the issue was not addressed by the DCA Commissioner, the DCA Human Resources Department, the DCA Personnel Department, nor the DCA Adjudication Division. Another example of the improper pressure regularly asserted against Judge Mirro is the following:

    a.    DCA v. Varick Communications; Hearing July 2008. Judge Mirro recommended dismissal of the charge against Respondent. Dennis revised Judge Mirro's decision several times in an effort to persuade her to change the decision. Dennis ultimately overruled Judge Mirro and found Respondent guilty of the charges.

26.    In October 2009 the Administrative Law Judges sent a letter to the President of the Civil Service Bar Association ("CSBA") Gloria Johnson, regarding Deputy Director Dennis' and Director Nancy Schindler's practice of pressuring the ALJ's to issue decisions which found for the DCA and imposed maximum fines. The point of the letter to CSBA was to:

    a.    Discuss the unethical practice of Schindler writing and overseeing the appeals and having a direct influence on the ALJ's decision making process because she supervised Dennis who supervised the ALJ's. (This chain of command still remains in place with Dennis and Plotkin filling the roles.)

    b.    Discuss the pressuring of ALJ's to change any decision that was not decided in favor of the DCA.

27.    In May 2010 the ALJ's initiated a Labor/Management meeting to address Dennis' and Schindler's improper pressure on the Administrative Law Judge to make decisions in favor

8

of the DCA and impose maximum fines. Judge Mirro pointed out to the attendees that pursuant to CAPA Section 1046, the Commissioner (and his designees) could accept, reject or modify the ALJ's decisions. CAPA does not allow the Commissioner to pressure the ALJ's to change or modify a recommended decision. Furthermore, the newly enacted 2007 Ethical Rules for ALJ's were implemented by the Mayor and clearly emphasized that ALJ's must not be influenced by anyone and the integrity of the tribunal must be upheld.

28.    At this meeting in May 2010, The Commissioner permitted only Judge Mirro to attend the meeting as a representative for the ALJ's along with Gloria Johnson, the CSBA President. The Management attendees included Sanford Cohen (Deputy General Counsel), Nancy Schindler (Director of Adjudication), Dorlene Cotton (Human Resources) and Russ DeVito (Deputy Director of Personnel). Management instructed the Judge Mirro and the other Judges to present further evidence of their complaint in order for management to further consider the matter.

29.    In 2010, Dennis and Schindler delegated the review process to James Plotkin (he had been employed by DCA in the Tribunal about 2 years at this time and was promoted to Principal Administrative Law Judge). Plotkin was appointed Deputy Director of Adjudication after Dennis was appointed Director.

30.    In September 2010, a second Labor/Management meeting occurred, at which Judge Mirro was again present, along with several other ALJ's, Gloria Johnson, the CSBA President and Manlio DiPreta, of counsel to the CSBA. The ALJ's submitted substantial proof of the improper pressure placed on them to find in favor of the DCA and impose maximum fines, however management chose not to take any action at this time. In this meeting the conflict

9

created by Schindler overseeing and writing appeals and having direct supervision and influence over Dennis in reviewing ALJ decisions was again discussed.

31. As a result of Judge Mirro's complaints to Dennis, Plotkin and Schindler, Judge Mirro and other ALJ's were threatened with disciplinary action, based on false allegations that decisions were not made in a timely manner and not found in favor of the DCA.

32. Shortly thereafter on November 15, 2010, Judge Mirro received her 2009 Annual Performance Evaluation, prepared by Dennis and reviewed and signed by Schindler, and she was assigned a "conditional" rating. Again Judge Mirro had not been asked to sign a Tasks & Standards for 2009. Again Dennis criticized Judge Mirro for her written decisions, however when Judge Mirro requested examples, Dennis and Schindler only cited to those decisions in which she failed to succumb to his pressure to find in favor of the DCA or impose the maximum fine. In Judge Mirro's evaluation appeal that illegal and inappropriate pressure was applied to find for the DCA, there was no response from the DCA Commissioner, the DCA Human Resources Department, the DCA Personnel Department, nor the DCA Adjudication Division. One example of this improper pressure was asserted in the following:

a. DCA v. Grand Avenue Café d/b/a The Spot; Hearing completed on March 11, 2009. Judge Mirro made the recommended decision that Respondent was not guilty of the charge of unlicensed sidewalk activity. However, Judge Mirro's decision was overturned by Dennis as he chose to ignore certain evidence presented at the hearing and find for the Respondent, imposing a fine of $800.

33. Following Judge Mirro's good faith effort to provide the DCA with the opportunity to

address the issue of illegal pressure on the ALJ's, Judge Mirro disclosed what she reasonably believes to be true and reasonably believes to constitute improper governmental action, to outside government agencies.

34. First, in the Spring of 2012, Judge Mirro and other ALJ's on four occasions contacted Public Advocate Bill de Blasio (two phone calls and two e-mails), with no response from his office. The Defendants were aware of Judge Mirro's attempts to engage the Public Advocate.

35. On April 12, 2012, Judge Mirro received her 2010 Annual Performance Evaluation, prepared by Dennis. She was assigned an "unsatisfactory" rating. Again Judge Mirro had not been asked to sign a Tasks & Standards for 2010. When Judge Mirro requested a current Tasks & Standards from Dennis he gave her an 8 year old copy of the 2002 Tasks & Standards. Dennis based Judge Mirro's evaluation on his criticism of decisions which Judge Mirro did not comply to Dennis' pressure and instead she reduced the number of guilty counts and/or imposed less than maximum fines. In Judge Mirro's appeal she complained of the illegal and inappropriate pressure to find for the DCA, however her evaluation appeal was not responded to by the DCA Commissioner, the DCA Human Resources Department, the DCA Personnel Department, nor the DCA Adjudication Division. One example of this improper pressure was asserted in the following:

a. DCA v. White Horse Bicycle Pedi, September 30, 2010. Judge Mirro reduced the counts on two related decisions for this Respondent. However, Judge Mirro was told by Dennis that there was a "policy" against reducing the counts on the decision, and that the decision must be changed. Judge Mirro's independent and unbiased decision making ability was restricted.

11

36.   Following the lack of response from Public Advocate Bill de Blasio and the repeated failure

of the DCA to address Judge Mirro's complaints of improper governmental action by the

DCA, Judge Mirro and other ALJ's e-mailed State Assemblyman Dov Hikind, on May 30,

2012. The ALJ's complained about the improper governmental action and subsequent

retaliation, specifically setting forth the following examples:

1.   the legal division is directing the adjudication division. This
affects our ability to remain separate from the agency and as
a consequence we tend to be less impartial.

2.   the director adjudication, who oversees and often writes the
appeal determinations, is directly involved in the judge's
decision making, and he often tells the judge what is relevant,
credible, etc.

3.   the director is putting pressure on the judges on how to decide
cases.

4.   the legal division often appeals the dismissals, the director
rules in favor of the department, forcing the judges to use his
appeal decisions as precedent.

5.   the director bends over backwards in favor of the legal
division or the enforcement division's requests, and does not
accord respondents the same consideration

6.   the director has told us that we are unable to discuss our cases
with our colleagues.

Correspondence with Hikind's office continued, including e-mails on June 11, 2012,

September 6, 2012 and September 14, 2012, yet Hikind informed the ALJ's that Mr. Hikind

was unable at that time to respond appropriately to the information that was conveyed

regarding the illegal governmental action of the DCA. Defendants had knowledge of Judge

Mirro's attempts to get Assembly Dov Hikind involved.

37.     On July 5, 2012 Judge Mirro and another ALJ wrote to the New York State Bar Association-Committee on Professional Ethics, requesting ethics opinions on the improper governmental action being practiced by DCA. In response the State Bar Association advised that the Rules of Professional Conduct do not answer any of the questions that the letter posed to the ethics committee. There were no opinions that addressed these issues.

38.     On December 3, 2012, Judge Mirro received her 2011 Annual Performance, prepared by Dennis. She was assigned an "unsatisfactory"rating. Judge Mirro's evaluation was based on Dennis' criticism of decisions in which Judge Mirro rendered decisions based on the entire record and applicable law without adhering to Dennis' inappropriate biased pressure. In Judge Mirro's appeal to the evaluation she complained of Dennis and Plotkin's practice of exerting illegal and unethical pressure on her to render decisions favoring the DCA. However there was no response by the DCA Commissioner, the DCA Human Resources Department, the DCA Personnel Department, nor the DCA Adjudication Division.

39.     In the 2011 Annual Performance Evaluation, Dennis lists the decisions, LL005251948, LL005275521, LL005267459, LL005259004, and TP060017067, as examples of improper findings of fact or improper credibility findings. These examples are cases in which Judge Mirro recommended a dismissal of the charges, a count reduction or a mitigation of the fines. Dennis also cites decisions PL005281431, LL005277829, TP060019306 and LL005282572 as support for the unsatisfactory evaluation by stating that Judge Mirro failed to consider the supervisor comments and notes regarding the review process. These four decisions were ones in which Judge Mirro recommended a dismissal of the charges, a count reduction or a mitigation of the fines, in opposition to the unconscionable pressure to rule in favor the DCA

and award the maximum penalty.

40.    On January 10, 2013, Judge Mirro and another ALJ went to the Department of Investigation ("DOI") to inform them of the illegal governmental actions being taken by the DCA. On this date, Judge Mirro and another ALJ met with Michael Morris and another DOI employee during lunch and arranged for a second meeting.

41.    On January 24, 2013, Judge Mirro and another ALJ were interviewed by Michael Morris and Kristin Walunas. The conversations were recorded by DOI. The President of the CSBA, Saul Fishman was present with Judge Mirro and the other ALJ at the DOI but Mr. Fishman was not permitted to attend the individual interviews.

42.    Judge Mirro and other ALJ's requested whistleblower protection on both January 10, 2013 and January 24, 2013. The DOI Chiefs of Staff would not grant them such protection. A few weeks passed and DOI advised Judge Mirro that the DOI would not take any action and the investigation would be turned over to Alba Pico, First Deputy Commissioner at DCA. In fear of further retaliation, Judge Mirro withdrew the complaint filed with DOI.

43.    On January 23, 2013, thirteen days after the first meeting, Judge Mirro was served with Disciplinary Charges by Jonathan Mintz, Commissioner of DCA. The charges allege incompetence and misconduct for the period of June 2011- January 4, 2013 seeking termination as a possible action. Outrageously, the DCA charges set forth over eight hundred sixty specifications.

44.    In good faith, to provide the DCA with the opportunity to address the issue of illegal pressure on the ALJ's to make pressured decisions, Judge Mirro and other DCA personnel contacted Public Advocate Bill de Blasio's Office on April 5, 2013. Judge Mirro and DCA personnel

14

met with Don Williams and Avi Fink, de Blasio's Chiefs of Staff. Upon information and belief the DCA was aware of this meeting.

45. Thereafter, on June 17, 2013, the New York Daily News reported that following an investigation, it was discovered that DCA officials had secretly implemented a quota system several years ago to get their inspectors to write more citations and drive up revenue for the city, with those inspectors failing to meet their quota being given poor evaluations. A high-ranking DCA official was quoted as saying, "Instead of protecting consumers, the entire agency has been turned into a piggy bank for the city."

46. On the same day, June 17, 2013, Public Advocate Bill de Blasio announced an investigation of the DCA quotas for issuing violations against small businesses and allegations that ALJ's were pressured to uphold unfair fines.

47. There is also a pattern and practice targeting older (senior) ALJ's for disciplinary action and/or termination, to wit:

    a.     In 2010, Lee Fawkes, age 57, was served Disciplinary Charges by the DCA.

    b.     Judy Gould, age 62, opted for retirement in August 2011, due to improper pressure from Dennis and Schindler to issue decisions favoring the DCA's cases. Gould had been with the DCA for 21 years.

    c.     Mitchell Nisonoff (age 55) received Disciplinary Charges (also based on his failing to succumb to pressure to decide cases in favor of the DCA.), and was transferred to the General Counsel's Office in April 2012. Nisonoff had served as an ALJ for over 15 years.

    d.     Susan Kassapian (age 58), was an ALJ from 2009-August 2012. Kassapian has 26

15

years experience with the DCA. Kassapian has served as Assistant Commissioner to the Legal Department, and as General Counsel to the Commissioner under prior administrations. Under Mintz's administration, while supervised by Schindler and Dennis, Kassapian has been demoted and received an income reduction, been issued disciplinary notices and been transferred from the Adjudication Division into the Office of the General Counsel. Prior to transferring to the Adjudication Division Kassapian was approached by Mintz when he removed Diana Zalph from this post. Kassapian was asked to clean house and rid the Adjudication Division of the senior judges. Kassapian refused this position because she, "did not want to do that."

48. Judge Mirro has been subjected to the following as compared to the younger ALJ's and those who have not complained, such as Steven Kelly- age 31, Eryn DeFontes- age 38, Maurice Nwikpo-Oppong- age 40's, Richard Zeitler- age 41, Shana Viruet- age 35. The treatment received by Judge Mirro includes:

a. Microscopic scrutiny- Judge Mirro's default decisions are reviewed by ALJ Tumelty, however Dennis regularly asks Tumelty if any errors appear on them, despite her having no issues with any of Judge Mirro's decisions. The younger ALJ's and those that have not complained are not subject to the same scrutiny. All Judge Mirro's default decisions were reviewed microscopically by Deputy Director Plotkin and scrutinized by Dennis who regularly forwarded the defaults to him. Upon information and belief other ALJ's are not monitored by Dennis and Plotkin.

b. Since April 2013, ALJ Tumelty reviews Judge Mirro's defaults with a microscope. Upon information and belief Dennis regularly seeks out from Tumelty any issues,

16

corrections, problems she has with Judge Mirro's work. Upon information and belief Tumelty has not provided anything to Dennis to substantiate his inquiries. For most of 2012 and up to April 2013 Plotkin reviewed Judge Mirro's defaults and forwarded information to Dennis on a regular basis. Prior to this defaults were not reviewed.

c.    Judge Mirro is assigned hearings that overlap into her lunch hour. Hearings are often assigned to Judge Mirro late in the morning and afternoon hearing sessions. This frequently causes hearings to extend beyond the designated hearing hours. No compensation is given for the time lost. The younger and/or more recently hired ALJ's and those that have not complained are not subject to the same. The result is that Judge Mirro's available time to write and review decisions is reduced. Dennis and Plotkin regularly neglected to compensate Judge Mirro for use of this time that reduced Judge Mirro's time to write and review decisions that must be rendered on a time restrictive schedule imposed and enforced by Dennis and Plotkin.

d.    Judge Mirro is assigned burdensome clerical tasks. Upon information and belief the younger and/or less senior ALJ's or those that do not address the undue supervisory pressure to find for the DCA cases.

e.    Judge Mirro is assigned a large caseload by Dennis Plotkin to cause delinquency in submitting decisions.

f.    Other acts of retaliation and discrimination.

## AS AND FOR A FIRST CLAIM FOR RELIEF-US CONSTITUTION-FIRST AMENDMENT-AGAINST ALL DEFENDANTS

49.    Plaintiff repeats and realleges each and every allegation set forth above with same force and

effect as if fully set forth herein.

50. Defendants violated the First Amendment of The United States Constitution by retaliating against Judge Mirro for external and internal remarks on matters of public concern relating to Defendants' practice of pressuring the ALJ's to issue decisions favorable to the DCA and impose maximum fines.

51. Plaintiff's advocacy was separate and apart from job duties she had as an Administrative Law Judge but rather as citizen regarding matters which are of a public concern and interest. Plaintiff's job responsibilities did not include going to the Public Advocate, DOI, and a legislator.

52. As a direct result of plaintiff's protected activity, DCA retaliated against Judge Mirro as set forth above.

53. Based upon the foregoing, Defendants retaliated against Plaintiff as set forth above in violation of the First Amendment of the U.S. Constitution.

54. There were no legitimate reasons for Defendants actions except retaliation due to Plaintiff's exercise of her First Amendment rights.

55. As a result of the defendants' actions, Plaintiff has been, and continues to be, deprived of her Federal rights under 42 U.S.C., Section 1983 and the fourteenth amendment due process rights applying the first amendment rights of the U.S. Constitution.

56. As a result of defendants' actions, plaintiff suffered emotional pain and humiliating irreparable damage to her reputation and was damaged. Defendants actions have injured Plaintiff in her employment.

57. Defendants deprived plaintiff of such rights under color of State Law.

18

58. As a result of Defendant DCA's actions in retaliating against Judge Mirro for her speech, Plaintiff has been damaged.

## AS AND FOR A SECOND- CLAIM FOR RELIEF-
## NYS CONSTITUTION ARTICLE I § 8- AGAINST ALL DEFENDANTS

59. Plaintiff repeats and realleges each and every allegation set forth above with same force and effect as if fully set forth herein.

60. As a result of the defendants' actions and in actions as set forth above, plaintiff has been, and continues to be, deprived of her rights under the New York State Constitution Article One Section 8 which states in pertinent part: "Every citizen may freely speak, write and publish his or her sentiments **on all subjects**, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press." (Emphasis added)

61. Defendant violated Article I § 8 of the New York State Constitution by retaliating against Judge Mirro because she spoke out externally and internally on matters of public concern relating to Defendants' practice of pressuring the ALJ's to issue decisions which found for the DCA and imposed maximum fines.

62. Judge Mirro was not mandated to speak out and was not reasonably expected to do so pursuant to her duties as an ALJ with the DCA.

63. Defendants have deprived plaintiff of such rights under color of State Law.

64. As a result of Defendant DCA's actions in retaliating against Judge Mirro for her speech, Plaintiff has been damaged.

19

## AS AND FOR A THIRD CLAIM FOR RELIEF-
## NYS EXECUTIVE LAW- AGAINST ALL DEFENDANTS

65.    Plaintiff repeats and realleges each and every allegation set forth above with same force and

       effect as if fully set forth herein.

66.    As a result of the foregoing, Defendants violated Executive Law § 296 by subjecting Plaintiff

       to discrimination (hostile work environment and disparate treatment) based on her age. As

       a result of Defendant violating the Executive Law Judge Mirro has been damaged.

## AS AND FOR A FOURTH CLAIM FOR RELIEF-
## ADMINISTRATIVE CODE- AGAINST ALL DEFENDANTS

67.    Plaintiff repeats and realleges each and every allegation set forth above with same force and

       effect as if fully set forth herein.

68.    As a result of the foregoing, Defendants violated the Administrative Code of the City of New

       York § 8-107 by subjecting Judge Mirro to discrimination (hostile work environment and

       disparate treatment) due to her age. As a result of Defendants violating the Administrative

       Code, Plaintiff has been damaged.

## DEMAND FOR A JURY TRIAL

69.    Plaintiff demands a trial by Jury of all issues and claims in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants that exceeds the minimum

jurisdiction of this Court as follows:

1.     Compensatory damages including but not limited to pain and suffering and

       damage to Plaintiff's reputation;

2.     Attorney fees and Costs; cannot yet be determined;

20

3. Equitable relief including but not limited to the following:

    a.    Declaring that the actions and inactions of the defendants as complained of herein, intentionally deprived plaintiff of her rights, privileges and immunities as secured by the Constitution and laws of the United States, pursuant to the First and Fourteenth Amendments for exercising her First Amendment Rights and rights protected by the New York State Constitution, as well as those her rights under the New York State Executive Law and the New York City Administrative Code;

    b.    Permanently enjoining the defendants from engaging in the practices complained of herein and expunging the negative evaluations and disciplinary charges from Plaintiff's file;

4. Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
        July 26, 2013

Respectfully submitted,
THE LAW OFFICES OF
STEWART LEE KARLIN, PC

_/Stewart Lee Karlin_____
STEWART LEE KARLIN, ESQ.
DANIEL DUGAN(awaiting admission)
Attorney for Plaintiff
9 Murray Street, Suite 4W
New York, NY 10007
(212) 792-9670
